CALABRIA, Judge.
Junior Davis Hiatt ("defendant") appeals from judgments of guilty of driving while impaired ("DWI") and transporting spiritous liquor within the passenger area of a motor vehicle in other than the manufacturer's unopened original container. We remand for resentencing.
On 4 September 2002, at approximately 1:47 a.m., Officer Kyle James ("Officer James") of the Mt. Airy Police Department observed a vehicle driven by defendant cut across the centerline and run off the roadway while making a right turn. Officer James followed defendant and observed defendant: (1) weave between the roadway centerline and fog line, (2) cross the centerline at least once, (3) travel fifteen to twenty miles per hour below the posted speed limit, and (4) run off the right of the roadway a second time. Officer James activated his blue light and stopped defendant.
After asking defendant for his driver's license, Officer James noticed a strong odor of alcohol and requested that defendant step away from the vehicle. As defendant exited the vehicle, Officer James was required to place his hands on defendant's chest to prevent defendant from falling. Officer James then observed that defendant had glassy, red, bloodshot eyes, a strong odor of alcohol on his breath, and slurred speech. At that point, Officer James asked defendant to complete a field sobriety test. As defendant attempted to comply, Officer James had to again place his hands on defendant's chest in order to steady him. Defendant then placed his hand on the vehicle to balance himself. After deciding further field tests would be unsafe for defendant, Officer James placed defendant under arrest for DWI. Officer James and a second officer then removed a passenger, who also appeared intoxicated, from defendant's vehicle and searched the passenger compartment. On the passenger side of the vehicle, the officers found two half empty bottles of liquor each with the manufacturer's seal broken.
Officer James transported defendant to the Mt. Airy Police Station and asked defendant several questions. Officer James testified that defendant: (1) gave the wrong month when asked the date, (2) did not respond when asked on which road he was stopped, (3) stated he had begun drinking in a bar around 11:00 p.m. and quit drinking five minutes before he was stopped, (4) could not remember how many drinks he had consumed, (5) was talkative, excited, insulting, cocky, and used profanity, and (6) appeared extremely intoxicated throughout the nearly two and one-half hours Officer James observed him.
Defendant pled not guilty to driving while impaired and transporting spirituous liquor within the passenger area of a motor vehicle in other than the manufacturer's unopened original container. A Surry County District Court judge found defendant guilty, imposed a level five sentence of 60 days in the custody of the Surry County Jail, suspended the sentence, and placed defendant on unsupervised probation for 12 months with appropriate monetary conditions. Defendant gave notice of appeal to superior court.
This matter was then heard in the Surry County Superior Court. In superior court, at the close of the State's evidence and after a recess of approximately twenty minutes, the following exchange occurred:
COURT: Bring our jury in.
(WHEREUPON: The jury returned to the courtroom at 2:53 p.m.)
BAILIFF: We lost four. Let me see if they're in the hall.
COURT: That's a bad sign. You guys start carrying on and yell a little bit to keep them awake. I've seen one, two, at least, maybe more. But I did see two. Court Reporter didn't see any. How many did the clerk see? How many jurors did you see sleeping?
CLERK: Only one.
COURT: You say two, two possibles.
(WHEREUPON: The jury returned to the courtroom at 2:54 p.m.)
During the charge to the jury, at the beginning of explaining the elements of DWI, the trial court asked the jury, "Y'all need a break? Everybody okay?" After the charge, the jury retired to deliberate at 4:37 p.m. A brief time later the trial court sent the verdict sheet to the jury. At 4:42 p.m., the trial court was informed that the jury had reached a verdict.
During sentencing for the DWI conviction, the superior court found as an aggravating factor that defendant's faculties were grossly impaired at the time defendant was driving and found as a mitigating factor that defendant had a safe driving record for five years prior to the date of the offense. The court then determined that the aggravating factor was substantially counterbalanced by the mitigating factor and imposed a level four sentence of 120 days in the custody of the N.C. Department of Correction, suspended the sentence, and placed defendant on supervised probation for thirty-six months. As a condition of a special probation, the defendant was required to serve forty-eight hours in the Surry County jail. Defendant appeals.
On appeal, defendant argues that at least two jurors were sleeping during the proceedings, thereby depriving him of his right to a trial by twelve jurors. As an initial matter, we note defendant did not make any objection at trial regarding the alleged juror misconduct. It is well established that under N.C. R. App. P. 10(b)(1) (2005):
in order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make.
Our Supreme Court has recently held that "the Rules of Appellate Procedure, regarding assignments of error and the contents of an appellant's brief, must be consistently applied; otherwise, the Rules become meaningless." Viar v. N.C. Dep't of Transp., 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). After reviewing the transcripts and briefs in this case, we see no manifest injustice on these facts that persuades us to use our discretion to hear this matter under Rule 2 of the North Carolina Rules of Appellate Procedure, and we do not address this assignment of error.
Defendant also asserts that the return of a verdict after only five minutes indicated the jury did not deliberate, and therefore, he was deprived of his right to a jury trial. Our Supreme Court first addressed this issue in the context of a criminal trial in State v. Spangler, 314 N.C. 374, 333 S.E.2d 722 (1985). In Spangler, the trial court denied a defendant's motion to set aside a verdict based on the jury returning a verdict after only fifteen minutes of deliberation. With respect to the question of how long a jury must deliberate in criminal cases, our Supreme Court observed,
the general rule applied in state and federal courts . . . is that a jury is not required to deliberate for any particular period of time, and the mere fact that a jury deliberates for a short period of time is generally insufficient to indicate that the verdict was the result of passion, prejudice, or bias.
Id., 314 N.C. at 387, 333 S.E.2d at 730. Our Supreme Court went on to quote Urquhart v. Durham and South Carolina Railroad Co., 156 N.C. 581, 72 S.E. 630 (1911), a case dealing with this issue in civil trials, and cited with approval Segars v. Atlantic Court Line Rail Road, 286 F.2d 767 (4th Cir. 1961), a case in which the United States 4th Circuit Court of Appeals determined "that there was no error when a verdict was returned in four minutes." Spangler, 314 N.C. at 388, 333 S.E.2d at 731. In conclusion, our Supreme Court stated,
that shortness of time in deliberating a verdict in a criminal case, in and of itself, simply does not constitute grounds for setting aside a verdict. The brevity of deliberation should only be questioned if there is evidence of some misconduct on the part of the jury or the trial judge believes that the jury acted with a contemptuous or flagrant disregard of its duties in considering the matters submitted to it for decision.
Id. Defendant has presented no evidence that "the jury acted with a contemptuous or flagrant disregard of its duties in considering the matters submitted to it for decision." Accordingly, we reject this assignment of error.
Defendant next argues the trial court erred by failing to declare a mistrial or set aside the verdict ex mero moto. The decision to declare a mistrial or set aside a verdict "is addressed to the discretion of the trial court and . . . will not be disturbed on appeal absent an abuse of discretion." State v. Smith, 138 N.C. App. 605, 610, 532 S.E.2d 235, 239 (2000). In support of this assertion, defendant relies on his previous arguments. For the reasons stated in the foregoing analysis, we conclude the trial court did not abuse its discretion by failing to grant a mistrial or set aside the verdict ex mero moto.
Defendant has also filed a motion for appropriate relief in which he argues the trial court erred during sentencing by finding as an aggravating factor that defendant was grossly impaired inviolation of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L. Ed. 2d 403 (2004), expressly adopted by our Supreme Court in State v. Allen, 359 N.C. 425, 615 S.E.2d 256 (2005). The basis of defendant's assertion is that, had the aggravating factor not been present to counterbalance the mitigating factor, he would have been sentenced at level five instead of level four. Recently, our Supreme Court considered the applicability of Blakely to North Carolina's Structured Sentencing Act, and held that "those portions of N.C. Gen. Stat. § 15A-1340.16 (a), (b) and (c) which require trial judges to consider evidence of aggravating factors not found by a jury or admitted by the defendant and which permit imposition of an aggravated sentence upon such judicial findings of such aggravating factors by a preponderance of the evidence violate the Sixth Amendment to the United States Constitution." Allen, 359 N.C. at 438-39, 615 S.E.2d at 265. The Court further stated that "after Blakely, it is clear that the 'statutory maximum' . . . is not the maximum sentence authorized by statute . . . but the maximum sentence authorized by the jury verdict or the defendant's admissions." Id., 359 N.C. at 437, 615 S.E.2d at 264. Although Allen only addressed sentences imposed under the North Carolina Structured Sentencing Act, our Supreme Court has held that "the rationale in Allen applies to all cases in which (1) a defendant is constitutionally entitled to a jury trial, and (2) a trial court has found one or more aggravating factors and increased a defendant's sentence beyond the presumptive range without submitting the aggravating factors to a jury." State v. Speight,___, N.C. ___, ___, 614 S.E.2d 262, 264 (2005) (applying Blakely to level two sentencing for driving while impaired under the guidelines set forth in N.C. Gen. Stat. § 20-179 (2003)).
Under the statutory sentencing guidelines for impaired driving, the trial court "must hold a sentencing hearing to determine whether there are any aggravating or mitigating factors that affect the sentence to be imposed." N.C. Gen. Stat. § 20-179(a) (2003). The appropriate level at which a defendant is sentenced is based on the finding and weighing of these aggravating and mitigating factors. N.C. Gen. Stat. § 20-179(f) (2003). If the judge determines that "there are no aggravating and mitigating factors, or that the aggravating factors are substantially counterbalanced by mitigating factors . . . the defendant is subject to Level Four punishment." Id. However, if "the mitigating factors substantially outweigh any aggravating factors . . . the defendant is subject to Level Five punishment." Id.
In the instant case, the trial court found an aggravating and a mitigating factor and sentenced defendant to a level four punishment. Under the principles set forth in Allen and Speight, defendant received a level four term of imprisonment, which exceeded the term he would have necessarily received as a level five offender had the trial court not erred in finding an aggravating factor that was not submitted to the jury. See N.C. Gen. Stat. § 20-179(f)(3) (2003). Accordingly, we remand for resentencing. Remanded for resentencing.
Judges HUNTER and LEVINSON concur.
Report per Rule 30(e).